IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:21-CV-00014-D

|  |  |  |
|---|---|---|
| NINA MAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNIVERSITY HEALTH SYSTEMS | ) | |
| OF EASTERN CAROLINA, INC. | ) | |
| d/b/a VIDANT HEALTH, et al. | ) | |
| | ) | |
| Defendants. | ) | |

On February 1, 2021, Nina May ("May" or "plaintiff") filed an amended complaint against University Health Systems of Eastern Carolina, doing business as Vidant Health ("Vidant Health"), Pitt County Memorial Hospital, Inc., doing business as Vidant Medical Center ("Vidant Medical"), Vidant Company Police Department ("Vidant PD"),[1] the City of Greenville, the Greenville Police Department ("Greenville PD"), and John and Jane Doe police officers (collectively, "defendants") [D.E. 7]. May alleges numerous claims: interference with civil rights, excessive force, and municipal liability under 42 U.S.C. § 1983 (counts one, two, and four), violations of 42 U.S.C. § 1981 (count three), violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 et seq. (counts five and six), and state law claims for battery, false imprisonment, intentional and negligent infliction of emotional distress, and negligence (counts seven through ten). See id. ¶¶

---

[1] Defendants argue there is no legal entity called Vidant PD. See [D.E. 25] 3–4. May responds that Vidant PD exists or at a minimum is an arm of Vidant Medical or Vidant Health. See [D.E. 26] 6–9. The court need not resolve that dispute because it is irrelevant. This court treats Vidant PD separately for the sake of argument, but if Vidant PD is a subset of Vidant Health or Vidant Medical, then the claims still fail for the same reasons stated in this order.

41–130.² Defendants filed motions to dismiss and memoranda in support [D.E. 20–25, 32–33]. May responded in opposition [D.E. 26–28, 34], and defendants replied [D.E. 36–38]. As explained below, the court grants defendants' motions to dismiss.

I.

May is a legal resident of the United States who at all relevant times was a resident of Pitt County, North Carolina. See Am. Compl. [D.E. 7] ¶ 5. Vidant Medical and Vidant Health are related nonprofit entities organized under North Carolina law with a principal place of business in Greenville, North Carolina. See id. ¶ 6. Vidant Medical is a hospital and Vidant Health is a nonprofit entity that supports Vidant Medical's services. See [D.E. 23] 5. Vidant Medical and Vidant Health were originally public entities. In 1998, the Pitt County Board of Commissioners converted them from public entities into private nonprofit institutions. See [D.E. 21-1, 23-2]. Vidant PD is a private, nongovernmental law enforcement agency that provides a suite of law enforcement services for Vidant Medical. See Am. Compl. ¶ 7; City of Greenville Ex. B [D.E. 32-2].³

The City of Greenville is a city organized under North Carolina law. See Am. Compl. ¶ 8. Greenville PD is a governmental law enforcement agency in the City of Greenville. See id. ¶ 9. May alleges, and defendants dispute, that Vidant PD is "affiliated with or an extension of Greenville PD" and thus operates "under the auspices of the City of Greenville." See id. ¶¶ 9, 68; but see [D.E. 33]

---

² In count eleven, May alleges a claim for injunctive relief. The court construes count eleven as a prayer for relief connected to May's substantive claims.

³ The City of Greenville cites the following URL for Exhibit B: https://dcin.ncsbi.gov/euid ocs/Resources/Agencies/PD_non-gov.htm. See [D.E. 32] 2 n.3. May has not contested the list's authenticity or accuracy, and the court accepts the exhibit as accurate. See Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016).

2

5–6. The John and Jane Doe police officers are law enforcement officers in the Vidant PD and Greenville PD that May alleges participated in the events giving rise to her claims. See Am. Compl. ¶ 10.

On January 31, 2018, May went to Vidant Medical Center seeking treatment for stroke-like symptoms, including blurred vision. See id. ¶ 11. A doctor examined May, concluded she had not had a stroke, and admitted her to stay overnight for testing. See id. ¶ 12. Doctors also determined May was not a suicide risk. See id. ¶¶ 14–15. Nonetheless, doctors put May on a suicide watch and held her against her will at Vidant Medical. See id. ¶ 17. May borrowed a phone from the hospital and called her daughter and 911 for help, and May told her son's girlfriend on the phone that she was being unlawfully detained. See id. ¶ 18. May alleges that Vidant Medical "intercepted" the phone calls to prevent her from getting help, and Greenville PD did not respond to her 911 call. Id. ¶¶ 19–20. Vidant Medical personnel then put May in a medical room and had Vidant PD officers guard the room. See id. ¶¶ 21–22. May alleges these Vidant PD officers attacked her, including punching her in the face. See id. ¶ 23. The attack left May bruised over her whole body and caused permanent damage to several of her teeth. See id. ¶¶ 23, 39. May claims that video footage allegedly shows Vidant PD officers standing around May's hospital room and laughing. See id. ¶ 26.[4]

Soon after the alleged attack, a nurse gave May a shot that "incapacitated her." Id. ¶¶ 29–30, 32. Once the injection took effect, May alleges that Vidant PD officers lifted her onto a gurney and other personnel took her to the psychiatric ward. See id. ¶¶ 27, 33–34. After two days at Vidant Medical, Vidant personnel forced May to sign and back date a form for voluntary commitment before they would release her. See id. ¶ 35. May apparently has tried to request information about

---

[4] May has not produced the alleged video.

3

her stay at Vidant Medical Center, but the hospital has refused to provide any information. See id. ¶ 36.

On January 28, 2021, May sued the defendants, alleging claims arising from her experience at Vidant Medical Center. Defendants filed motions to dismiss for failure to state a claim upon which relief can be granted. May opposes the motions.

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a party's factual allegations must "nudge[ ] [its] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822

4

F.3d 159, 166 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court may also consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

This court has federal question jurisdiction over May's section 1983, section 1981, and ADA claims. See 28 U.S.C. § 1331. May alleges her state law claims under this court's supplemental jurisdiction. A district court has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Under 28 U.S.C. § 1367, "a federal court has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them all in one judicial proceeding." Carnegie-Melon Univ. v. Cohill, 484 U.S. 343, 349 (1988) (cleaned up); see United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).

A district court "may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c); see Carnegie-Mellon Univ., 484 U.S. at 350 n.7; Gibbs, 383 U.S. at 726–27; ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 394 (4th Cir. 2012); Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995). In making its decision, a court may consider "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." Shanaghan, 58 F.3d at 110; see Carnegie Mellon Univ., 484 U.S. at 350 n.7; Gibbs, 383 U.S. at 726–27; Crosby

5

v. City of Gastonia, 635 F.3d 634, 644 n.11 (4th Cir. 2011). A court also may consider the time investment of the court and parties and "the existence of some significant issue of state law best resolved in state court." Shanaghan, 58 F.3d at 112; see McCullough v. Branch Banking & Tr. Co., 844 F. Supp. 258, 260–62 (E.D.N.C. 1993), aff'd, 35 F.3d 127 (4th Cir. 1994); see also Gunsay v. Mozayeni, 695 F. App'x 696, 703–04 (4th Cir. 2017) (per curiam) (unpublished).

III.

Defendants argue that May's federal law claims fail under Federal Rule of Civil Procedure 12(b)(6). Essentially, defendants contend: (1) May fails to state a section 1983 claim against Vidant Health and Vidant PD because she fails to allege that the Vidant PD officers acted pursuant to an official policy or custom; (2) May fails to plausibly allege an impaired contractual relationship or, in the alternative, the requisite state action under section 1981; (3) May's claims against the City of Greenville fail under Federal Rule of Civil Procedure 8(a); (4) the City of Greenville is not responsible for the actions of Vidant employees or police officers; (5) Greenville PD lacks the capacity to be sued under North Carolina law; and (6) May's ADA claims are factually and legally deficient. See [D.E. 21, 23, 25, 33, 36–38].

A.

Vidant Health and Vidant PD contend the court should dismiss May's section 1983 claims against them in counts two and four because they are not state actors. See [D.E. 21] 3–7; [D.E. 23] 3–7. May disagrees. See [D.E. 26] 9–13 & n.1; [D.E. 28] 6–17.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); see Davison v. Randall, 912 F.3d 666, 679 (4th Cir. 2019); Pitt Cnty. Mem'l Hosp., 572 F.3d at 180.

6

Section 1983 does not regulate private conduct. See Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49–50 (1999); Pitt Cnty. Mem'l Hosp., 572 F.3d at 180–81 ("[M]erely private conduct, no matter how discriminatory or wrongful, fails to qualify as state action" (quotation and alteration omitted)); Mentavlos v. Anderson, 249 F.3d 301, 310 (4th Cir. 2001); see also Manhattan Cmty. Access Corp. v. Halleck, 139 S. Ct. 1921, 1928 (2019). "Section 1983's color-of-law prerequisite is synonymous with the more familiar state-action requirement applicable to Fourteenth Amendment claims, and the analysis for each is identical." Davison, 912 F.3d at 679 (quotation omitted); see Pitt Cnty. Mem'l Hosp., 572 F.3d at 180. Thus, for a private person or entity to be liable under section 1983, that person or entity's conduct must qualify as state action—i.e., the conduct must be "fairly attributable to the state." Davison, 912 F.3d at 679 (quotation omitted); see Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982); Holly v. Scott, 434 F.3d 287, 292 (4th Cir. 2006); Mentavlos, 249 F.3d at 310. Determining whether certain conduct qualifies as state action is not "a simple line between States and people operating outside formally governmental organizations." Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001). Instead, the analysis requires "normative judgment" that examines the "totality of the circumstances" to determine whether "a sufficiently close nexus" exists between the private conduct and the state. Davison, 912 F.3d at 679–80 (quotations omitted); see Holly, 434 F.3d at 292; Mentavlos, 249 F.3d at 311–12.

The same analysis that applies to municipalities under section 1983 also applies to private corporations that employ special police officers. See Austin v. Paramount Parks, Inc., 195 F.3d 715, 727–28 (4th Cir. 1999); see also Monell v. Dep't. Soc. Servs., 436 U.S. 658 (1978); Spell v. McDaniel, 824 F.2d 1380 (4th Cir. 1987). Thus, "a private corporation is not liable under § 1983 for torts committed by [its employees] when such liability is predicated solely upon a theory of respondeat superior." Austin, 195 F.3d at 728; see Rodriguez v. Smithfield Packing Co., 338 F.3d

7

348, 355–56 (4th Cir. 2003); Powell v. Shopco Laurel Co., 678 F.2d 504, 505–06 (4th Cir. 1982); Best v. Village of Ellenville, No. 4:20-CV-00038-BO, 2020 WL 2499601, at *4 (E.D.N.C. Apr. 1, 2020) (unpublished), report and recommendation adopted, 2020 WL 2497705 (E.D.N.C. May 14, 2020) (unpublished). "Rather a private corporation is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights." Austin, 195 F.3d at 728; see Williams v. Aramark Food Serv., 5:08-CT-3168-D, 2011 WL 4460440, at *3 (E.D.N.C. Sept. 26, 2011) (unpublished).

May fails to plausibly allege claims in counts two and four under section 1983 against Vidant Health and Vidant PD. The Vidant defendants are private entities. Although Pitt County used to operate Vidant Medical as a public entity, Vidant became a private nonprofit entity in 1998. See [D.E. 21-1]; Pitt Cnty. Mem'l Hosp., 572 F.3d at 178 (explaining the history of the switch from a public to private entity). Pitt County does not employ Vidant Health's Board of Trustees, and the Pitt County does not control the "ordinary course of [the Board's] decisionmaking." Pitt Cnty. Mem'l Hosp., 572 F.3d at 184. The hospital receives some federal and state funding and Pitt County "retain[s] enough control" to ensure the hospital's "mission is continued indefinitely," but that control is "without concern as to the day-today [sic] operation of the facility." Id. Furthermore, Vidant Health is a private nonprofit entity that supports Vidant Medical's services. See [D.E. 23] 6; [D.E. 23-1] (articles of incorporation stating Vidant Health's purpose is "to benefit or support Pitt County Memorial Hospital"); [D.E. 23-2]. Thus, the Vidant defendants are all private entities.

In opposition, May contends that Vidant Health and Vidant PD engage in state action because they assume the public function of policing. See [D.E. 28] 9–10; see also [D.E. 26] 9. A public function qualifies as state action if the government has "traditionally and exclusively performed the function." Halleck, 139 S. Ct. 1928–29. "[V]ery few functions fall into that category." Id.

8

(quotation omitted); see Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 158 (1978). The Supreme Court has not addressed whether private police officers serve a public function for the purposes of section 1983 liability. See Flagg Bros., 436 U.S. at 163–64; Fuller v. Carilion Clinic, 382 F. Supp. 3d 475, 485 (W.D. Va. 2019). The Fourth Circuit also has not squarely addressed the issue. See Austin, 195 F.3d at 727; Fuller, 382 F. Supp. 3d at 485–86; but cf. United States v. Day, 591 F.3d 679, 683–89 (4th Cir. 2010); Rodriguez, 338 F.3d at 355; Austin, 195 F.3d at 728.

The court need not decide whether the Vidant PD officers in this case meet the so-called "public function" test. May is suing Vidant Health and Vidant PD based on the alleged torts of individual Vidant PD officers. See Am. Compl. Thus, May's claims against Vidant Health and Vidant PD rest solely on a respondeat superior theory. Accordingly, Vidant Health and Vidant PD are liable only if the relevant Vidant PD officers acted pursuant to an official policy or custom. See, e.g., Austin, 195 F.3d at 728; Williams, 2011 WL 4460440, at *3.

Official policy includes decisions by the company's policymakers, and custom includes "practices so persistent and widespread as to practically have the force of" policy. See Connick v. Thompson, 563 U.S. 51, 61 (2011); Pembaur v. City of Cincinnati, 475 U.S. 469, 478–84 (1986); Spell, 824 F.2d at 1385–87. Official policy can include formal rules, informal ad hoc policies, and in appropriate circumstances, a single decision by the relevant policymaker. See Pembaur, 475 U.S. at 479–80; Hunter v. Town of Mocksville, 897 F.3d 538, 553–55 (4th Cir. 2018); Spell, 824 F.2d at 1385–86. When the alleged policy or custom involves a failure to adequately train employees, that failure "must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." Connick, 563 U.S. at 61 (quotation omitted) (alteration in original); see City of Canton v. Harris, 489 U.S. 378, 388–89 (1989). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability . . . unless proof of the incident includes

9

proof that it was caused by an existing, unconstitutional [corporate] policy, which policy can be attributed to a [corporate] decisionmaker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823–24 (1985); Gordon v. Cnty. of Orange, 6 F.4th 961, 974 (9th Cir. 2021); Doe v. Broderick, 225 F.3d 440, 456 (4th Cir. 2000); Beard v. Town of Topsail Beach, No. 7:19-CV-97-FL, 2021 WL 2638147, at *10 (E.D.N.C. June 25, 2021) (unpublished), appeal docketed, No. 21-1804 (4th Cir. July 26, 2021).

In count two, May alleges an excessive force claim against Vidant PD and John and Jane Doe officers. See Am. Compl. ¶¶ 51–57. As for Vidant PD, May must plausibly allege that the John and Jane Doe Vidant police officers acted pursuant to an official policy or custom. May argues that the Vidant employees and police officers followed a number of policies and customs, including: "sequestering psychiatric patients and holding them against their will," "admitting people as psychiatric patients against their will," "forcing individuals to sign consent forms," "assessing individuals with disabilities unrelated to their competency or danger to themselves or others," "discriminating against African Americans as patients and employees." [D.E. 28] 16–17.

Count four alleges that Vidant Health failed to properly train its employees and the Vidant PD officers. See id. ¶¶ 79–87. May's allegations include both alleged training omissions and allegations that Vidant Health affirmatively trained officers to follow certain unconstitutional policies and practices. See id. ¶ 83.

May fails to plausibly allege claims against Vidant PD and Vidant Health in counts two and four, respectively. As for official policies, May does not allege who made the policies (either through formal rules, a single decision, or otherwise) or where they are documented. As for customs, May does not plausibly allege any facts outside her own alleged experience at Vidant Medical Center

10

to show a pervasive practice of misconduct among the Vidant police force. Stated differently, May alleges the existence of policies and customs based on a single incident. See id. ¶ 84 (stating the policies and customs "of condoned misconduct [are] tacitly or overtly sanctioned, as evidenced by Defendants [sic] failure to respect Ms. May's rights" (emphasis added)). Allegations based on a single incident do not suffice. See, e.g., Tuttle, 471 U.S. at 823–24; Gordon, 6 F.4th at 976; Broderick, 225 F.3d at 456. Accordingly, the court dismisses count two against Vidant PD.

As for Vidant Health's alleged failure to adequately train employees, the alleged failure must amount to deliberate indifference toward the rights of those with whom Vidant employees and police officers come into contact. See Connick, 563 U.S. at 61; City of Canton, 489 U.S. at 388. Yet May does not plausibly allege what training the Vidant Health employees and police officers received. Thus, May fails to plausibly allege that lack of adequate training caused the alleged misconduct rather than Vidant Health personnel acting in flagrant disregard of training that was adequate and proper. Because of that ambiguity, May's amended complaint fails to plausibly allege that Vidant Health was deliberately indifferent as to training its employees and police officers. Accordingly, the court dismisses count four against Vidant Health.

B.

In count three, May alleges violations of 42 U.S.C. § 1981 against all defendants. See Am. Compl. ¶¶ 58–78. Defendants argue that count three fails to state a claim under either the "make and enforce contracts" clause or the "full and equal benefits" clause of section 1981. See [D.E. 21] 7–10; [D.E. 23] 8–10; [D.E. 25] 6–9; [D.E. 33] 9 n.1; [D.E. 36] 4–7; [D.E. 37] 4–7; [D.E. 38] 5–8.

When a plaintiff sues a state actor, such as the City of Greenville, under section 1981, section 1983 is the "exclusive federal remedy." Dennis v. Cnty. of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995) (quotation omitted); see Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 733 (1989). In a section 1981

11

suit against a state actor, a plaintiff must show "an official policy or custom of discrimination." Dennis, 55 F.3d at 156; see Austin, 195 F.3d at 728; Rodriguez, 338 F.3d at 355–56; Spellman v. Sch. Bd. of City of Chesapeake, No. 2:17-cv-635, 2018 WL 2085276, at *10–12 (E.D. Va. Apr. 5, 2018) (unpublished), report and recommendation adopted, 2018 WL 2015810 (E.D. Va. Apr. 30, 2018) (unpublished). May fails to plausibly allege that the City of Greenville was responsible for setting the policies and customs of Vidant employees and police officers or that the City of Greenville was responsible for their alleged conduct. Furthermore, for the same reasons May failed to plausibly allege an official policy or custom for her section 1983 claims against Vidant Health and Vidant PD, she also fails to plausibly allege that the Vidant employees and officers acted pursuant to one of the City of Greenville's official policies or customs. Thus, the court dismisses May's section 1981 claim against the City of Greenville.

As for the other defendants, May's section 1981 allegations primarily rely on the "make and enforce contracts" clause of section 1981(a) and its definition in section 1981(b). See Am. Comp. ¶¶ 59, 61–62, 64, 66–68, 70, 74–75 (expressly citing section 1981(b) as the basis of May's allegations). Section 1981(a) provides, in part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). Section 1981(b) defines the phrase "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Put simply, these two provisions together "prohibit[] racial discrimination in the making and enforcement of private contracts." Runyon v. McCrary, 427 U.S. 160, 168–69 (1976), superseded by statute on other grounds; see Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 474–76 (2006); Woods v. City of Greensboro, 855 F.3d 639, 645 (4th Cir. 2017).

12

A plaintiff asserting a section 1981 claim under the "make and enforce contracts" clause must plausibly allege "an impaired 'contractual relationship' under which the plaintiff has rights." Domino's Pizza, 546 U.S. at 476 (cleaned up). Stated differently, "a plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce.'" Id. at 479–80; see Painter's Mill Grille, LLC v. Brown, 716 F.3d 342, 348 (4th Cir. 2013); Lindsay v. Yates, 498 F.3d 434, 441–42 (6th Cir. 2007). A plaintiff must also plausibly allege that but-for race, she would not have suffered the loss of a legally protected right. See Comcast Corp. v. Nat'l Ass'n of African American-Owned Media, 140 S. Ct. 1009, 1019 (2020). "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." Domino's Pizza, 546 U.S. at 476; see Orgain v. City of Salisbury, 305 F. App'x 90, 104 (4th Cir. 2008) (per curiam) (unpublished).

The only contractual relationship May alleges is that her "status as a citizen of the United States is a 'contractual relationship' under § 1981(b)." Am. Compl. ¶ 61. May's allegations regarding her stay and treatment at Vidant Medical Center do not involve the making or enforcing of a contract. Instead, May's amended complaint describes alleged tortious misconduct. See, e.g., Am. Compl. ¶¶ 104–30. Thus, May has not plausibly alleged a claim under the "make and enforce contracts" clause of section 1981.

To the extent May's section 1981 claim relies on section 1981's "full and equal benefits" clause, the claim also fails. A claim under the "full and equal benefits" clause requires "state action denying the plaintiff the full and equal benefit of the law." Jones v. Poindexter, 903 F.2d 1006, 1010 (4th Cir. 1990); see Youngblood v. Hy-Vee Food Stores, Inc., 266 F.3d 851, 855 (8th Cir. 2001).

13

As discussed, May does not plausibly allege the requisite state action to state a claim against Vidant Health, Vidant Medical, and Vidant PD because May has failed to plausibly allege that the Vidant employees and police officers acted pursuant to an official policy or custom. Thus, the court dismisses the section 1981 claim against Vidant Health, Vidant Medical, and Vidant PD.

C.

As for her federal law claims, May names the City of Greenville as a defendant in counts three, four, and five. See Am. Compl. As explained, the court dismisses count three against the City of Greenville. The City of Greenville argues that the court should dismiss all of May's claims against it because they fail under Federal Rule of Civil Procedure 8(a), the City of Greenville is not responsible for the actions of Vidant PD officers, and the public duty doctrine bars the claims. See [D.E. 33].

Rule 8(a) provides, in part, "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a)'s requirements are calculated to "give the defendant fair notice of what the [plaintiff's] claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (quotation omitted); see Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Shepherd ex rel. Shepherd v. City of Shreveport, 920 F.3d 278, 287 (5th Cir. 2019); Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005). Generally, "collective allegations are not prohibited by [Rule 8(a)]. Rather, the allegations must simply provide [d]efendants with fair notice of the claims against them." Walker v. Apex Wind Constr. LLC, No. CIV-14-914-D, 2015 WL 348778, at *3 (W.D. Okla. Jan. 26, 2015) (unpublished); see Bryant v. Wells Fargo Bank, Nat'l Ass'n, 861 F. Supp. 2d 646, 660 (E.D.N.C. 2012); Davis v. Bowens, No. 1:11CV691, 2012 WL 2999766, at *3 (M.D.N.C. July 23, 2012) (unpublished), report and recommendation adopted, 2012 WL 4462184 (M.D.N.C. Sept. 25,

14

2012) (unpublished).

Besides alleging that Greenville PD officers failed to respond to her 911 call, May does not distinguish the City of Greenville's conduct from the conduct of any other defendants. Rather, May alleges that the City of Greenville is vicariously liable for the acts of Vidant PD officers because Vidant PD exists "under the auspices of" the City of Greenville and Greenville PD. Am. Comp. ¶ 68; see id. ¶¶ 8–9, 18–20. Moreover, May's amended complaint expressly names the defendants against which each count is alleged. See, e.g., id. at 17. Thus, May's complaint gives the City of Greenville fair notice of the claims against it and does not fail under Rule 8(a).

Vidant PD is a nongovernmental law enforcement agency and thus is not a part of the City of Greenville or the Greenville PD. See City of Greenville Ex. B [D.E. 32-2]. And as explained, Vidant Medical and Vidant Health are private, nonprofit entities. Thus, May has failed to plausibly allege that the City of Greenville or Greenville PD has any supervisory authority over Vidant Medical, Vidant Health, or Vidant PD. Accordingly, the City of Greenville cannot be vicariously liable for the acts of Vidant PD officers or other Vidant employees. Alternatively, even if Vidant PD was connected to the City of Greenville or the Greenville PD, count four fails for the same reasons, explained above, that it fails against Vidant Health. Similarly, even if the City of Greenville had some supervisory role over the Vidant defendants, count five fails for the same reasons, stated below, that it fails against the Vidant defendants.[5]

D.

May alleges section 1981, section 1983, ADA, and various state law claims against Greenville PD. See Am. Compl. ¶¶ 58–103, 109–130. As a municipal police department, however,

---

[5] The court need not consider whether the public duty doctrine applies in this case.

15

Case 4:21-cv-00014-D   Document 51   Filed 12/09/21   Page 15 of 20

Greenville PD lacks the capacity to be sued. See [D.E. 33] 11. In federal court, state law governs the capacity of a governmental body to be sued. See Fed. R. Civ. P. 17(b)(3); Avery v. Cnty. of Burke, 660 F.2d 111, 113–14 (4th Cir. 1981). "In North Carolina, there is no statute authorizing suit against a police department." Tanksley v. Rose, No. 3:19cv229-HEH, 2019 WL 6709386, at *3–4 (E.D. Va. Dec. 9, 2019) (unpublished) (quotation and alteration omitted); see McCray v. Chapel Hill Police Dep't, No. 1:06CV984, 2008 WL 762260, at *1 (M.D.N.C. Mar. 19, 2008) (unpublished), aff'd, 289 F. App'x 605 (4th Cir. 2008) (unpublished); Moore v. City of Asheville, 290 F. Supp. 2d 664, 673 (W.D.N.C. 2003), aff'd, 396 F.3d 385 (4th Cir. 2005); Coleman v. Cooper, 89 N.C. App. 188, 192, 366 S.E.2d 2, 5 (1988), overruled on other grounds by Meyer v. Walls, 347 N.C. 97, 489 S.E.2d 880 (1997). "A municipal police department is a part of a city and lacks the capacity to be sued." Wilson v. Fayetteville Police Dep't, No. 5:13-CV-178-BO, 2014 WL 555663, at *1 (E.D.N.C. Feb. 11, 2014) (unpublished). Accordingly, Greenville PD is not capable of being sued, and the court dismisses all claims against Greenville PD.

E.

In counts five and six, May alleges ADA violations against Vidant Medical, Vidant Health, Vidant PD, the City of Greenville, and Greenville PD. In count five, May alleges a violation of Title II of the ADA. See Am. Compl. ¶¶ 88–95. The defendants named in this count argue May has failed to plausibly allege a claim against them under Title II of the ADA. See [D.E. 21] 10–13; [D.E. 23] 11–13; [D.E. 25] 9–10.

Title II of the ADA only applies to public entities. See 42 U.S.C. § 12132. As relevant here, a public entity is "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(A)–(B). To state a claim under Title II of the ADA, a plaintiff "must plausibly allege (1)

16

that he has a disability or has been regarded as having a disability; (2) that he is otherwise qualified to receive the benefits provided by a public entity; and (3) that he was denied those benefits or was otherwise discriminated against on the basis of his disability." Fauconier v. Clarke, 966 F.3d 265, 276 (4th Cir. 2020). Under Title II, a "disability" is "a physical or mental impairment that substantially limits one or more major life activities." Id. (quoting 42 U.S.C. § 12102(1)). As explained, the Vidant defendants are private entities. Thus, Title II of the ADA does not apply to them. Furthermore, although May alleges she has anxiety and depression, she does not plausibly allege that her anxiety and depression substantially limit any of her major life activities. See Am. Compl. ¶ 92. May also does not plausibly allege that the City of Greenville or the Greenville PD's failure to adequately respond to her 911 call denied her the benefit of that public assistance on the basis of her anxiety or depression. Moreover, as explained, Greenville PD lacks the capacity to be sued. Thus, the court dismisses count five.

Count six alleges that Vidant Medical and Vidant PD violated Title III of the ADA. Vidant Medical and Vidant PD argue May failed to plausibly allege a claim under Title III of the ADA. See [D.E. 21] 13; [D.E. 25] 11. Under Title III of the ADA, May must plausibly allege that "(1) [she] is disabled within the meaning of the ADA; (2) the defendant owns, leases, or operates a place of public accommodation; and (3) the defendant discriminated against [her] because of [her] disability." J.D. by Doherty v. Colonial Williamsburg Found., 925 F.3d 663, 669–70 (4th Cir. 2019). May does not plausibly allege that Vidant PD owns, leases, or operates Vidant Medical Center. Thus, May does not plausibly allege a claim under Title III of the ADA against Vidant PD.

May's allegations are essentially a bare assertion that "[t]he acts and omissions of Defendants constitute discrimination in violation of Title III of the ADA by unlawfully detaining, searching and assaulting [May] by reason of her disability." Am. Compl. ¶ 102. Stated differently, May alleges

17

that she was diagnosed with anxiety and depression before the incident at Vidant Medical Center and that Vidant employees and police officers mistreated her because of her anxiety and depression. See Am. Compl. ¶¶ 99–102. Although May alleges she suffers from anxiety and depression, May does not plausibly allege that her anxiety and depression are disabilities under the ADA because she does not allege that they are so severe that they "substantially limit[] one or more [of her] major life activities." 42 U.S.C. § 12102(1)(A); see Jacobs v. N.C. Admin. Office of the Cts., 780 F.3d 562, 572–74 (4th Cir. 2015). Moreover, May does not plausibly allege that the Vidant employees and police officers mistreated her because of her anxiety and depression. See J.D. by Doherty, 925 F.3d at 670. Thus, May does not plausibly allege a Title III ADA claim in count six, and the court dismisses the claim.

## IV.

May alleges numerous claims against John and Jane Doe defendants, who are officers in the Vidant and Greenville police departments. See Am. Compl. ¶¶ 42–78, 104–130. John Doe suits are disfavored in federal court. See, e.g., Chidi Njoku v. Unknown Special Unit Staff, 217 F.3d 840, 2000 WL 903896, at *1 (4th Cir. 2000) (per curiam) (unpublished table decision); Schiff v. Kennedy, 691 F.2d 196, 197–98 (4th Cir. 1982). Only when a plaintiff is likely to be able to identify the defendant after further discovery should a John Doe case be allowed to proceed. Schiff, 691 F.2d at 198. A plaintiff who seeks to proceed against unidentified defendants must still "provide an adequate description of some kind which is sufficient to identify the person involved so that process can be served." Keno v. Doe, 74 F.R.D. 587, 588 n.2 (D.N.J. 1977), aff'd, 578 F.2d 1374 (3d Cir. 1978). Furthermore, the complaint must provide each John Doe defendant with fair notice of the specific facts upon which his individual liability rests." Nasious v. Two Unknown B.I.C.E. Agents, 492 F.3d 1158, 1163 (10th Cir. 2007).

18

May alleges that video footage exists showing that Vidant Medical "had direct observation" of May's room and could log her activities. Am. Compl. ¶ 24. May also alleges that the video shows officers "crowding around [her] room in a causal [sic] manner." Id. ¶ 26. May alleges that the video shows officers going into May's room after a nurse prepared a syringe and then later shows Vidant PD officers lifting May onto a gurney. See id. ¶¶ 31, 33.

May did not include the alleged video footage with her filings. Moreover, the events giving rise to May's complaint occurred nearly four years ago, and May waited nearly three years before filing her complaint. See Am. Compl. ¶ 11. Although May allegedly has video footage of the officers in or around her room, she has been unable to identify the John and Jane Doe defendants. Furthermore, even though May alleges that Vidant Health will not give her the names of the officers, see Am. Compl. at 4 n.1, May somehow allegedly obtained video footage of her hospital room and the area around it. May does not allege whether the officers are sufficiently visible in the video to be identifiable. Thus, the court concludes that May's amended complaint does not sufficiently show that the John and Jane Doe defendants would be identifiable through reasonable discovery so as to be served in this case.[6] And because John Doe suits are disfavored in federal court, the court dismisses without prejudice the claims against the John and Jane Doe defendants.

V.

May raised her state law claims under this court's supplemental jurisdiction. See Am. Compl. ¶ 3. A district court "may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c); see

---

[6] To the extent the North Carolina State Bureau of Investigation has information about this case that would allow May to identify the officers in the video, May does not plausibly allege that she has fully exercised her victim's rights under N.C. Gen. Stat. §§ 15A-830 et seq. to learn about her case. Cf. Am. Compl. ¶ 37.

19

Carnegie-Mellon Univ., 484 U.S. at 350 n.7; Gibbs, 383 U.S. at 726–27; ESAB Grp., Inc., 685 F.3d at 394; Shanaghan, 58 F.3d at 110. The court has considered the issues of fairness and convenience to the parties, federal policy, comity, and judicial economy in weighing whether to exercise supplemental jurisdiction in the absence of any lingering federal law claims. See Carnegie Mellon Univ., 484 U.S. at 350 n.7; Gibbs, 383 U.S. at 726–27; Crosby, 635 F.3d at 644 n.11; Shanaghan, 58 F.3d at 110. The court declines to exercise supplemental jurisdiction and dismisses without prejudice May's state law claims.

## VI.

In sum, the court grants defendants' motions to dismiss [D.E. 20, 22, 24, 32] and DISMISSES WITHOUT PREJUDICE plaintiff's complaint [D.E. 7].

SO ORDERED. This 9 day of December, 2021.

JAMES C. DEVER III
United States District Judge